**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| RAJA VENKATESH<br><br>                    *Plaintiff,*<br><br>        v.<br><br>MONDEE HOLDINGS, INC, PRASAD<br>GUNDUMOGULA, and CONTINENTAL<br>STOCK TRANSFER & TRUST COMPANY,<br><br>                    *Defendants.* | Case No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Raja Venkatesh ("Plaintiff"), by and through his attorneys, Katten Muchin Rosenman LLP, brings this action against Defendants Mondee Holdings, Inc. ("Mondee"), Prasad Gundumogula, and Continental Stock Transfer & Trust Company ("CST"), and respectfully alleges as follows:

<u>**NATURE OF THE CASE**</u>

1.      Plaintiff brings this action to recover the losses he has sustained, and continues to sustain, as a result of Defendants' inexplicable placement of certain restrictive legends on Plaintiff's shares of Mondee stock, and Defendants' continued refusal to remove them, thereby preventing Plaintiff from selling his shares as he is legally entitled to do.  Through this action, Plaintiff also seeks injunctive relief requiring Defendants to immediately remove the restrictive legends as necessary for Plaintiff to sell his shares.

2.      Plaintiff is a former officer of Mondee Inc., a private company wholly owned by Mondee Holdings II, Inc., which was in turn wholly owned by Mondee Holdings, LLC (together, "Legacy Mondee").  Legacy Mondee is the operational predecessor of Defendant Mondee, which is a travel technology company that was formed by a merger between Legacy Mondee and a

Special Purpose Acquisition Company in July 2022.  At all relevant times, Defendant Prasad Gundumogula led and controlled Mondee, and Defendant CST served as Mondee's stock transfer agent.

3.      In April 2023, following the merger, Plaintiff redeemed Legacy Mondee stock units he had previously been granted for 660,871 shares of Mondee common stock.  At the time of the redemption, those Mondee shares were unrestricted securities and unencumbered by any contractual lock-up provision or applicable securities regulation.  Indeed, in furtherance of the redemption, Plaintiff became party to a Registration Rights Agreement that Mondee had previously entered into with stockholders, expressly requiring Mondee to ensure that all outstanding common stock was registered for resale.  Mondee's counsel also prepared for Plaintiff, in connection with the redemption, a letter that expressly instructed Mondee's stock transfer agent to ensure that Plaintiff's shares were free of any restrictions on his ability to sell them.

4.      Nevertheless, in late May 2023, when Plaintiff intended to sell his shares and Mondee's stock was trading at roughly $12 per share, Plaintiff discovered that he was unable to do so because of certain restrictive legends that Defendants had wrongfully placed on them.  Those legends indicated that the shares were (1) not subject to an effective registration statement, (2) subject to a lock-up provision, and (3) owned by an affiliate of Mondee and, therefore, considered "control securities."  Those legends are indisputably false and without legal basis.

5.      Beginning in late May 2023 and continuing to this day, Plaintiff has repeatedly asked Defendants to remove the restrictive legends from his shares as necessary for him to sell them.  In spite of Plaintiff's good faith efforts, Defendants have continuously refused Plaintiff's requests.  While Mondee has refused to offer Plaintiff any explanation for doing so, CST has, at best, told Plaintiff simply that Mondee instructed it to maintain the legends on his shares.

6.      Defendants' placement of the restrictive legends on Plaintiff's shares, and their refusal to remove them, has prevented Plaintiff from selling his shares and thereby rendered them worthless.  Moreover, over the course of the six months following Plaintiff's initial request that the restrictive legends be removed, Mondee's stock price has declined precipitously, and currently trades at roughly $3 per share.  Accordingly, even if the restrictive legends were removed and Plaintiff were permitted to sell his shares today, he would have already suffered an enormous economic loss given his lost opportunity to sell in May 2023, when Mondee stock was trading around $12 per share.

7.      Defendants' placement and maintenance of the restrictive legends on Mr. Venkatesh's shares was not mere oversight.  Rather, Mondee and Mr. Gundumogula have brazenly wielded the restrictive legends as a means to prevent Mr. Venkatesh from selling his stock holding, and thereby artificially inflate the price of Mondee stock.  As set forth in greater detail below, they have pursued this fraudulent market-manipulation scheme in order to obtain favorable pricing terms for a secondary stock offering Mondee completed in June 2023 and a private placement in October 2023, and to increase Mr. Gundumogula's personal sale proceeds in connection with the secondary offering.

8.      Plaintiff, through this lawsuit, seeks an injunction requiring Defendants to immediately remove the restrictive legends on his shares, and both compensatory and punitive damages based on the enormous loss he has suffered as a result of Defendants' wrongful actions.

## PARTIES

9.      Plaintiff Raja Venkatesh is an individual residing in Austin, Texas.

10.     Defendant Mondee is a corporation organized under the laws of Delaware having a principal place of business in Austin, Texas.

3

11.    Defendant Prasad Gundumogula is an individual residing in Leander, Texas.

12.    Defendant CST is a limited purpose trust company having a principal place of business in New York, New York.

## JURISDICTION AND VENUE

13.    Plaintiff asserts claims under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and SEC Rule 10b-5 ("Rule 10b-5") promulgated thereunder, 17 C.F.R. § 240.10b-5.  Accordingly, this Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

14.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

15.    Venue is proper in this District under 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.  Substantial acts giving rise to Plaintiff's claim occurred in this District, and Defendant CST is domiciled in this District.  Venue is also proper because Plaintiff's contract-based claims, as asserted in Counts VIII and IX herein, arise from a Registration Rights Agreement, dated July 18, 2022, that contains a choice-of-venue clause requiring that all actions relating to that agreement be brought in a court sitting in New York County in the State of New York.

## SUBSTANTIVE ALLEGATIONS

### Mondee and the Registration of Mondee Common Stock for Resale

16.    Legacy Mondee was formed in or around 2011.  Together with its subsidiaries, Legacy Mondee operated as a travel technology company providing technologies, operating systems, and services to consumers and travel affiliates to facilitate their transactions with travel-related businesses.

17.     Mr. Gundumogula, who was a co-Founder of Legacy Mondee, served as Legacy Mondee's CEO and Chairman since 2015.   Upon information and belief, as of 2021, Mr. Gundumogula and his wife, Madhuri Pasam, were the only directors of Legacy Mondee.   In addition, upon information and belief, Mr. Gundumogula was the majority and controlling shareholder of Legacy Mondee.

18.     On December 20, 2021, Legacy Mondee announced that it had entered into an agreement to merge into ITHAX Acquisition Corp. ("ITHAX"), a Special Purpose Acquisition Company (the "Merger").   The Merger was completed on July 18, 2022, after which point ITHAX was renamed as Mondee Holdings, Inc., and Mondee common stock began trading on Nasdaq. Under the terms of the business combination agreement governing the Merger, Legacy Mondee stock would be converted into shares of Mondee common stock.

19.     Following the Merger, Mr. Gundumogula continued to serve as Mondee's CEO and Chairman.   Upon information and belief, and based on Mr. Venkatesh's observations and experiences while serving as an officer of Legacy Mondee and Mondee, Mr. Gundumogula closely manages all aspects of Mondee's stock transactions and structure.

20.     Concurrently with the closing of the Merger, a Registration Rights Agreement, dated July 18, 2022 (the "Registration Rights Agreement") was executed by, among other parties, Mondee and certain accredited institutional investors for purposes of granting those investors customary registration rights with respect to their newly obtained Mondee stock.   Specifically, Section 2.1.1 of the Registration Rights Agreement required Mondee to (1) file with the SEC a registration statement registering the resale of Mondee common stock "[w]ithin thirty (30) calendar days following the Closing Date" of the Merger, and (2) "use its commercially reasonable

efforts to have such [registration statement] declared effective as soon as practicable after the filing thereof."[1]

21.     In addition to the Registration Rights Agreement provisions governing Mondee's specific obligations with respect to the registration for resale of Mondee common stock, the agreement contained a catchall "good faith" requirement.  Specifically, Section 3.1.16 requires that Mondee, "in good faith, cooperate reasonably with, and take such customary actions as may reasonably be requested by the participating Holders, consistent with the terms of this Agreement, in connection with such Registration."

22.     The Registration Rights Agreements also contained, in Article V thereof, a lock-up provision that prohibited the resale of Mondee common stock until the earlier of (1) six months after the Merger's closing; (2) the date at which the closing price of Class A common stock equals or exceeds $12 per share, under certain conditions; and (3) the date on which Mondee enters into a change-of-control transaction.

23.     On or around October 3, 2022, Mondee filed a Form S-1/A registration statement (the "Registration Statement") with the SEC for purposes of registering the resale of Class A Mondee common stock by certain identified "Selling Stockholders."  The Registration Statement specifically identified Mr. Venkatesh as a Selling Stockholder, and indicated that 655,250 shares of Mondee common stock were being registered for resale on his behalf.[2]

24.     The Registration Statement also identified Mr. Gundumogula as a Selling Stockholder.  It further indicated that Mr. Gundumogula beneficially owned 67,224,648 shares, or

---

[1] Section 6.4 of the Registration Rights Agreement provides that "(1) this Agreement shall be governed by and construed under the laws of the State of New York and (2) the venue for any action taken with respect to this Agreement shall be any state or federal courts sitting in New York County in the State of New York."

[2] The Registration Statement was updated, in a Prospectus Supplement filed with the SEC on March 10, 2023, to increase the number of Mondee shares registered for resale on Mr. Venkatesh's behalf to 660,871.

82.5% of Mondee's outstanding common stock, including stock he owned directly and indirectly through his sole ownership of Mondee Group LLC ("Mondee Group") and through his wife, Ms. Pasam.

25.     The Registration Statement was declared effective by the SEC on or around October 12, 2022.

26.     The lock-up prohibition on the resale of Mondee common stock, as set forth in the Registration Rights Agreement, expired on January 18, 2023, six months after the Merger closed.

27.     At all relevant times, CST has served as Mondee's stock transfer agent, having previously served as ITHAX's stock transfer agent prior to the Merger.  A stock transfer agent is a trust company that works on behalf of a security issuer to, among other things, record changes in stock ownership, and issue and maintain stock certificates.  Upon information and belief, CST is compensated by Mondee for the stock transfer services it provides the company.

**Mr. Venkatesh's Employment with Legacy Mondee and Mondee Stock Redemption**

28.     Mr. Venkatesh joined Legacy Mondee as its CFO in March 2017.  He served in that capacity until mid-2021, when he became an Executive Vice President and head of Mergers & Acquisitions.

29.     In connection with his employment with Legacy Mondee, Mr. Venkatesh was granted 11,531,627 Class D Units in that company pursuant to a management incentive plan.

30.     Following the Merger, Mr. Venkatesh continued to serve as an Executive Vice President and head of Mergers & Acquisitions at Mondee until September 2022, when he was separated from Mondee.  Upon his separation, Mr. Venkatesh ceased to be employed or otherwise affiliated with Mondee.

31.     On April 25, 2023, Mr. Venkatesh entered into a Redemption Agreement with Legacy Mondee (the "Redemption Agreement"), pursuant to which Mr. Venkatesh redeemed his 11,531,627 Class D Units in Legacy Mondee for 660,871 shares (the "Shares") of Mondee Class A common stock (the "Redemption").

32.     Contemporaneous with the execution of the Redemption Agreement, Mr. Venkatesh and Mondee executed a Registration Rights Agreement Joinder on or around April 25, 2023 (the "Joinder"), pursuant to which Mr. Venkatesh agreed to become a party to the Registration Rights Agreement.  The Joinder provides, specifically, that Mr. Venkatesh would be bound by "the Registration Rights Agreement as a Holder of Registrable Securities in the same manner as if the undersigned were an original signatory to the Registration Rights Agreement, and the undersigned's shares of Common Stock shall be included as Registrable Securities under the Registration Rights Agreement to the extent provided therein."

33.     The Joinder annexed (as "Exhibit A") a letter, dated April 24, 2023, that was prepared for Mr. Venkatesh's signature by Mondee's external counsel, Hutchison PLLC, for purposes of instructing Mondee's transfer agent, CST, to ensure that the Shares were free of any restrictive legends that could prevent their transfer or sale.  Specifically, the letter, bearing the subject line, "Raja Venkatesh – Representation Letter; Removal of Restrictive Legends on Securities," stated in relevant part:

> In order to present all facts necessary to authorize the transfer agent for Mondee Holdings, Inc., a Delaware corporation (the "Company"), to remove any applicable restrictive legends and stop transfer instructions from 660,871 shares of common stock of the Company (the "Securities") held by Raja Venkatesh (the "Holder"), the undersigned hereby represents that:
>
> a)  The Securities were registered for resale pursuant to the Registration Statement on Form S-1, as amended (Registration No. 333-266277) (the "Registration Statement") with the Securities and Exchange Commission (the "SEC"), which was declared effective by the SEC on October 12, 2022.

b) Holder has confirmed with the Company that the Registration Statement is currently effective ….

34.     On April 26, 2023, Mr. Venkatesh received an email from Zachary Jaimes of Hutchison PLLC, external counsel for Mondee, advising him that he had "accurately completed all necessary forms required for the redemption" of his Legacy Mondee Class D Units.  Mr. Jaimes further stated that CST was then processing the appropriate paperwork and, once complete, Mr. Venkatesh would be able to access his shares of Mondee common stock through an online portal.

**Mr. Venkatesh Discovers that Restrictive Legends Were Incorrectly Placed on the Shares**

35.     Mr. Venkatesh intended and sought to sell his entire holding of Mondee stock upon receiving them through the Redemption.

36.     By mid-May 2023, Mr. Venkatesh had not yet been contacted by Mondee or CST as to whether his Shares had been transferred to him.  Accordingly, in mid-May 2023, Mr. Venkatesh contacted CST by phone to request that the Shares be transferred to him via his CST account.

37.     On or around May 30, 2023, Mr. Venkatesh finally received an account statement from CST reflecting that the Shares had been transferred from Mondee to his CST account on April 27, 2023.  CST, however, had not informed Mr. Venkatesh prior to May 30, 2023 that the Shares were transferred to his CST account.

38.     Around late May 2023, Mondee's stock was trading at roughly $12 per share.

39.     The account statement provided by CST indicated that three separate restrictive legends (the "Restrictive Legends") had been placed on the Shares.  Together, the Restrictive Legends indicated that the Shares were (1) not registered pursuant to an effective registration statement, and could not be sold or transferred except pursuant to an effective registration statement; (2) subject to a lock-up, and could not be sold or transferred during the term of the lock-

up; and (3) owned by an "affiliate" and thereby considered "control securities" under SEC Rule 144, requiring an opinion of counsel providing a satisfactory explanation that the shares may be sold or transferred in compliance with SEC Rule 144.

40.     Each of the Restrictive Legends lacked basis and had been incorrectly placed on the Shares.  As set forth above, the Shares were (1) registered for resale pursuant to the Registration Statement, which had been declared effective by the SEC on or around October 12, 2022; (2) not subject to a lock-up, as the lock-up restriction on the sale of Mondee common stock, as set forth in the Registration Rights Agreement, expired on January 18, 2023; and (3) not owned by an "affiliate" and thereby considered "control securities," given that Mr. Venkatesh was then no longer employed by, or otherwise affiliated with, Mondee.

41.     The papers Mondee prepared and provided to Mr. Venkatesh confirm that the Restrictive Legends had been incorrectly placed on the Shares.  Specifically, the Joinder expressly provided that the Shares would be included as registered securities as required by the Registration Rights Agreement.  Further, the April 24, 2023 letter prepared and provided to Mr. Venkatesh by Mondee's counsel, Hutchison PLLC, expressly instructed CST to "remove any applicable restrictive legends and stop transfer instructions" from the Shares.

42.     In further confirmation that the Shares were unrestricted securities, several company insiders sold Mondee Class A common stock – the same type of stock owned by Mr. Venkatesh – on or around June 9, 2023, after the Redemption took place.  As alleged below, those individuals include Mr. Gundumogula, Fintiklis Orestes, a director and Executive Vice Chairman of Mondee, and Pasupuleti Venkat, Mondee's Chief Technology Officer.

43.     Mr. Venkatesh was told directly by two other individuals, both of whom had been employed by Legacy Mondee and received Mondee stock through the Merger, that their shares of

Mondee stock initially had restrictive legends incorrectly placed on them.  Those individuals further told Mr. Venkatesh that the restrictive legends on their shares were only removed once they were able to personally convince Mr. Gundumogula to allow the removal over his initial objection.

**Mr. Venkatesh Repeatedly Requests, and Defendants Continuously Refuse, to Remove the Restrictive Legends**

44.     Beginning in late May 2023, and continuing to this day, Mr. Venkatesh has repeatedly contacted Defendants to request that they remove the Restrictive Legends on the Shares, as necessary for him to sell them.

45.     Mr. Venkatesh contacted CST to make this request, and convey that the Restrictive Legends were incorrectly placed on the Shares, on at least four separate occasions.  Those occasions include his (1) phone call to a CST representative on May 30, 2023; (2) email to CST's compliance department on June 16, 2023; (3) phone call with a representative of CST on October 5, 2023; (4) email to several CST account managers on November 7, 2023.

46.     Mr. Venkatesh contacted Mondee, both directly and indirectly through CST and Mondee's lawyers, to make this request, and convey his concern that the Restrictive Legends were incorrectly placed on the Shares, on at least six separate occasions.  Those occasions include (1) an email sent by Yvette Montanez, a CST account manager, to Mondee's General Counsel, Meredith Waters, on Mr. Venkatesh's behalf on June 25, 2023; (2) a phone call on July 13, 2023 between Mr. Venkatesh and John Rudd of Hutchison PLLC, after which Mr. Rudd emailed Ms. Waters on July 14, 2023 communicating Mr. Venkatesh's request; (3) an email sent by Ms. Montanez to Ms. Waters on September 7, 2023 to follow up on Ms. Montanez's June 25 email, to which Ms. Waters responded by stating that Mondee was "aware of Raja's request and are working on it internally"; (4) a phone call between Mr. Venkatesh and Ms. Waters on August 17, 2023, during which time Ms. Waters stated that she would look into the issue; (5) an email Mr. Venkatesh

sent to Mr. Gundumogula on October 30, 2023; and (6) a letter sent by Mr. Venkatesh's undersigned counsel to Meredith Waters on November 20, 2023.

47.     Mr. Venkatesh, to this day, has never received an explanation from Mondee, or anyone acting on its behalf, as to Mondee's placement of the Restrictive Legends on the Shares, and its continuing refusal to remove them.  At best, Mr. Venkatesh received an email from Ms. Montanez of CST on or around November 7, 2023, informing him that Mondee had instructed CST to maintain each of the Restrictive Legends on the Shares.  In Ms. Montanez's November 7 email, on which Ms. Waters was copied, CST explained: "We follow Mondee's instructions on their restricted registered holders.  I have communicated to the client your inquiries, which is as much as CST can do on your behalf."

48.     Mondee's stock price has dropped precipitously since May 2023 when Mr. Venkatesh intended to sell the Shares and began requesting that Defendants remove the Restrictive Legends.  In late May 2023, Mondee's stock was trading around $12 per share.  In mid-July, Mondee's stock price was trading around $7 per share.  By late October, Mondee's stock price was trading around $4 per share.  On December 7, 2023, the date preceding the filing of this Complaint, the closing price of Mondee stock was $3.10 per share.  Accordingly, since late May 2023, the value of the Shares has already declined by roughly $6 million.

**Mondee's and Mr. Gundumogula's Scheme to Artificially Inflate the Price of Mondee Stock**

49.     Defendants' placement of the Restrictive Legends on the Shares, and their continuing refusal to remove them despite Mr. Venkatesh's good faith requests, is no accident. Upon information and belief, Mondee and its officers have taken these actions in an attempt to inflate the price of Mondee stock so to maximize their capital raises and enable Mondee officers to obtain enormous returns by cashing out on their stock.

50.     As noted above, following the Redemption Mr. Venkatesh owned 660,871 shares of Mondee common stock.  As of May 10, 2023, according to a Form 10-Q that Mondee filed with the SEC on May 16, 2023, there were 83,992,565 shares of Mondee common stock outstanding. As such, Mr. Venkatesh owned nearly 1% of Mondee's total outstanding common stock.

51.     Given Mr. Venkatesh's large holding of Mondee stock, and the low volume at which Mondee stock was trading in May 2023, his sale of all of the Shares that month, as he intended to do, could have caused a significant decline in Mondee's stock price at a time when, as detailed below, Mondee and its officers were undertaking various transactions in Mondee stock.

52.     On or around June 9, 2023, Mondee closed a secondary offering of 5,250,000 shares of Mondee common stock, on behalf of certain existing Mondee stockholders, at a price of $10 per share (the "Secondary Offering").  Mondee had previously announced the pricing of the Secondary Offering on June 7, 2023.

53.     Immediately prior to the Secondary Offering, Mr. Gundumogula beneficially owned 34,276,662 shares of Mondee common stock (or 40.8% of the total shares outstanding), including stock he owned directly and indirectly through his sole ownership of Mondee Group, which then held 21,837,168 shares in Mondee, and through his wife, Ms. Pasam.

54.     On June 9, 2023, in connection with the Secondary Offering, Mr. Gundumogula sold 1,659,404 shares of Mondee stock through Mondee Group for $10 per share, resulting in sale proceeds to him in the amount of $16,594,040.

55.     Other company insiders made significant sales of Mondee stock on June 9, 2023 in connection with the Secondary Offering.  Specifically, Mr. Orestes, a director and Executive Vice Chairman of Mondee, sold 568,248 shares, resulting in $5,682,480 in sale proceeds.  In addition,

Mr. Venkat, Mondee's Chief Technology Officer, sold 110,089 shares, resulting in $1,100,890 in sale proceeds.

56.     Upon information and belief, Mondee and Mr. Gundumogula placed and maintained the Restrictive Legends on the Shares, thereby preventing Mr. Venkatesh from selling them in May 2023, in order to ensure favorable pricing terms for the Secondary Offering, and to increase Mr. Gundumogula's and other insiders' personal sale proceeds in connection with the Secondary Offering.

57.     On October 17, 2023, Mondee completed a private placement in which it raised $10 million through the sale of warrants to purchase 1,275,000 shares of Mondee common stock, as well as certain newly designated preferred stock, to an investment fund, Tuesday Investor LLC (the "Private Placement").

58.     Upon information and belief, Mondee and Mr. Gundumogula continued to maintain the Restrictive Legends on the Shares, thereby preventing Mr. Venkatesh from selling them, in order to ensure favorable pricing terms for the Private Placement.

59.     To this day, Mr. Venkatesh remains unable to sell the Shares because Defendants continue to wrongfully maintain the Restrictive Legends on them.  Upon information and belief, Defendants continue to refuse Mr. Venkatesh's request that the Restrictive Legends be removed based on Mondee's and Mr. Gundumogula's motivation to artificially increase the price of Mondee stock so to increase the value of Mondee and Mr. Gundumogula's enormous stock holding.

### Count I:  Violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5

### (Against Defendants Mondee and Mr. Gundumogula)

60.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 59 as if fully set forth herein.

61.     Defendants Mondee and Mr. Gundumogula have violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder by knowingly and/or recklessly engaging in practices in connection with the purchase or sale of a security.

62.     Through its conduct, Defendants Mondee and Mr. Gundumogula have (1) employed devices, schemes, and artifices to defraud, and (2) engaged in acts, practices, and a course of business which operated as a fraud and deceit.  Specifically, Defendants Mondee and Mr. Gundumogula engaged in a concerted effort to ensure that the Restrictive Legends would be placed and maintained on the Shares in order to prevent Mr. Venkatesh from selling them and thereby artificially inflate the price of Mondee common stock.

63.     Defendants Mondee's and Mr. Gundumogula's acts, courses of conduct, devices and scheme, as alleged herein, were perpetrated with scienter or with an intent to deceive and manipulate the market for Mondee common stock.

64.     Defendants Mondee and Mr. Gundumogula were motivated to deceive and manipulate the market for Mondee common stock in order to ensure favorable pricing terms for the Secondary Offering and the Private Placement, and to increase the proceeds from Mr. Gundumogula's and other officers' sale of Mondee stock in connection with the Secondary Offering.

65.     Defendants Mondee's and Mr. Gundumogula's violations of the Exchange Act and Rule 10b-5 have caused Plaintiff to suffer substantial damages including, but not limited to, the lost value of the Shares.

### Count II:  Violation of 8 Del. C. § 158

**(Against Defendants Mondee and CST)**

66.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 65 as if fully set forth herein.

67.     Plaintiff is the beneficial owner of 660,871 shares of Class A common stock issued by Mondee.

68.     Under 8 Del. C. § 158, Plaintiff has the right to a certificate of the Shares free of any legends restricting their transfer or sale.

69.     Defendants Mondee and CST placed, and continue to maintain, the Restrictive Legends on the Shares without any legal basis or authority for doing so, in violation of 8 Del. C. § 158.  As set forth above, the Shares are registered for resale pursuant to the Registration Statement, they are not subject to any lock-up provision, and they are not considered control securities under SEC Rule 144.

70.     Beginning on or around May 30, 2023, Plaintiff has repeatedly requested that Defendants Mondee and CST remove the Restrictive Legends from the Shares.  Defendants Mondee and CST have continuously refused to remove the Restrictive Legends from the Shares, thereby further violating 8 Del. C. § 158.

71.     Defendants Mondee's and CST's placement of the Restrictive Legends on the Shares, and their refusal to remove them, has caused Plaintiff to suffer substantial damages including, but not limited to, the lost value of the Shares.

**Count III:  Violation of Del. C. §§ 8-401 and 8-407**

**(Against Defendants Mondee and CST)**

72.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 71 as if fully set forth herein.

73.     Plaintiff is the beneficial owner of 660,871 shares of Class A common stock issued by Mondee.

74.     Del. C. § 8-401 requires a security issuer to remove a restrictive legend from a stockholder's shares, upon the stockholder's request, without unreasonable delay.

16

75. Del. C. § 8-407 imposes the same obligations on a security issuer's transfer agent as are imposed on the security issuer under Del. C. § 8-401

76. Plaintiff has at all relevant times been eligible to have the Shares issued to him free of the Restrictive Legends.  As set forth above, the Shares are registered for resale pursuant to the Registration Statement, they are not subject to any lock-up provision, and they are not considered control securities under SEC Rule 144.

77. Beginning on or around May 30, 2023, Plaintiff has repeatedly requested that Defendants Mondee and CST remove the Restrictive Legends from the Shares.

78. Defendants Mondee and CST have continuously refused to remove the Restrictive Legends from the Shares, thereby violating their statutory duties under Del. C. §§ 8-401 and 8-407.

79. Defendants Mondee's and CST's refusal to remove the Restrictive Legends from the Shares in violation of Del. C. §§ 8-401 and 8-407 has caused Plaintiff to suffer substantial damages including, but not limited to, the lost value of the Shares.

## Count IV:  Breach of Fiduciary Duty

### (Against Defendants Mondee and Mr. Gundumogula)

80. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 79 as if fully set forth herein.

81. Defendants Mondee and Mr. Gundumogula owe Plaintiff fiduciary duties as a Mondee stockholder.

82. Defendants Mondee and Mr. Gundumogula have breached their fiduciary duties to Plaintiff by wrongfully placing the Restrictive Legends on the Shares and refusing Plaintiff's request that they be removed, thereby preventing Plaintiff from disposing of the Shares as he is legally entitled to do.

83.     Notwithstanding Defendants' refusal to remove the Restrictive Legends from the Shares, Defendants Mondee and Mr. Gundumogula have permitted other Mondee stockholders to sell their shares of common stock, thereby demonstrating preference for certain stockholders over Plaintiff.

84.     Defendants Mondee's and Mr. Gundumogula's breach of their fiduciary duties to Plaintiff has caused Plaintiff to suffer substantial damages including, but not limited to, the lost value of the Shares.

### Count V: Negligence

**(Against Defendants Mondee and CST)**

85.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 84 as if fully set forth herein.

86.     Defendants Mondee and CST owed Plaintiff a duty of care with respect to the issuance and maintenance of the Shares.

87.     Defendants Mondee and CST knew or should have known that there was no legal basis or authority to place and maintain the Restrictive Legends on the Shares, and thereby prevent Plaintiff from selling or otherwise disposing of them.

88.     Defendants Mondee and CST, in breach of the duty of care they owed to Plaintiff, placed the Restrictive Legends on the Shares and refused Plaintiff's request that they be removed.

89.     Defendants Mondee's and CST's negligent conduct has caused Plaintiff to suffer substantial damages including, but not limited to, the lost value of the Shares.

### Count VI: Conversion

**(Against Defendants Mondee and CST)**

90.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 89 as if fully set forth herein.

91.    Plaintiff is the beneficial owner of the Shares and has had the right to sell, transfer, or otherwise dispose of them.

92.    By placing the Restricting Legends on the refusing to remove the Restrictive Legends from the Shares, Defendants Mondee and CST wrongfully exercised dominion and control over the Shares and thereby deprived Plaintiff of his rights in, and the value of, the Shares.

93.    As a result of Defendants Mondee's and CST's conversion of the Shares, Plaintiff has suffered substantial damages including, but not limited to, the lost value of the Shares.

### Count VII:  Civil Conspiracy

### (Against All Defendants)

94.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 93 as if fully set forth herein.

95.    Defendants were at all times aware that Plaintiff was the beneficial owner of the Shares, and that there was no basis to maintain the Restrictive Legends on the Shares.

96.    Plaintiff repeatedly requested that Defendants remove the Restrictive Legends from the Shares.

97.    Defendant Mr. Gundumogula is the CEO and Chairman of Mondee, and closely manages all aspects of Mondee's stock transactions and structure.

98.    Upon information and belief, and as indicated by Defendant CST in its email correspondence with Plaintiff, Defendant CST maintained the Restrictive Legends on the Shares at Defendant Mondee's instruction.

99.    Upon information and belief, CST is compensated by Mondee for its transfer agent services, thereby providing CST an incentive to follow Mondee's instructions even if such instructions lack any legal basis or are otherwise unlawful.

100.    Defendants reached an agreement or otherwise acted in concert to maintain the Restrictive Legends on the Shares, and thereby restrict Plaintiff's ability to sell them.

101.    Defendants' placement of the Restrictive Legends on the Shares and refusal of Plaintiff's request that they be removed was, and continues to be, wrongful and unlawful as a violation of, among other laws, 8 Del. C. § 158.

102.    Defendants' conspiracy to maintain the Restrictive Legends from the Shares has caused Plaintiff to suffer substantial damages including, but not limited to, the lost value of the Shares.

## Count VIII:  Breach of Contract

### (Against Defendant Mondee)

103.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 102 as if fully set forth herein.

104.    The Registration Rights Agreement is a valid and binding agreement.

105.    Pursuant to the Joinder, Mr. Vankatesh became a party to, and obtained rights under, the Registration Rights Agreement in the same manner as if he were an original signatory to that agreement.

106.    Section 3.1.16 requires that Mondee, in connection with the registration of Mondee common stock, "in good faith, cooperate reasonably with, and take such customary actions as may reasonably be requested by the participating Holders, consistent with the terms of this Agreement, in connection with such Registration."

107.    Plaintiff has performed all obligations and promises that were required of him under the Registration Rights Agreement.

108.    Defendant Mondee breached Section 3.1.16 of the Registration Rights Agreement by, in bad faith, placing the Restrictive Legends on the Shares and refusing Plaintiff's request that

they be removed, thereby depriving Mr. Venkatesh of the benefit of the Shares' registration as was contemplated in the Registration Rights Agreement.

109.    Defendant Mondee's breach of Section 3.1.16 of the Registration Rights Agreement has caused Plaintiff to suffer substantial damages including, but not limited to, the lost value of the Shares.

## Count IX: Breach of the Implied Covenant of Good Faith and Fair Dealing

### (Against Defendant Mondee)

110.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 109 as if fully set forth herein.

111.    The Registration Rights Agreement is a valid and binding agreement.

112.    Pursuant to the Joinder, Mr. Vankatesh became a party to, and obtained rights under, the Registration Agreement in the same manner as if he were an original signatory to the Registration Rights Agreement.

113.    The Registration Rights Agreement contains a choice-of-law clause providing that the agreement shall be governed by New York law.

114.    Under New York law, every contract contains an implied covenant of good faith and fair dealing, which is breached when a contracting party acts in a manner that, although not expressly prohibited by any contractual provision, deprives the counterparty of the right to receive the fruit of the contract.

115.    The purpose of the Registration Rights Agreement is to ensure that Mondee's common stock is registered for resale in order to permit the holder of Mondee stock to sell his shares for his own benefit.

116.    Defendant Mondee breached the implied covenant of good fair dealing contained in the Registration Rights Agreement by, in bad faith, placing the Restrictive Legends on the

Shares and refusing Plaintiff's request that they be removed, thereby depriving Mr. Venkatesh of the benefit of the Shares' registration as was contemplated in the Registration Rights Agreement.

117.    Defendant Mondee's breach of the implied covenant of good fair dealing has caused Plaintiff to suffer substantial damages including, but not limited to, the lost value of the Shares.

## Count X:  Injunction

### (Against Defendants Mondee and CST)

118.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 117 as if fully set forth herein.

119.    Plaintiff has at all relevant times been eligible to have the Shares issued to him free of the Restrictive Legends.  As set forth above, the Shares are registered for resale pursuant to the Registration Statement, they are not subject to any lock-up provision, and they are not considered control securities under SEC Rule 144.

120.    As a result of Defendants Mondee's and CST's wrongful and unlawful placement of the Restrictive Legends on the Shares, and continued refusal to remove them, Plaintiff has been prevented from selling them, thereby rendering them worthless.

121.    Plaintiff suffers increasing loss each day that Defendants Mondee and CST refuse to remove the Restrictive Legends on the Shares given the continued decline in Mondee's stock price.

122.    Defendants Mondee's and CST's continued refusal to remove the Restrictive Legends from the Shares is without legal authority or basis, and is violative of applicable statutory and common law.

123.    In light of the foregoing, Plaintiff seeks an injunction requiring and compelling Defendants Mondee and CST to remove the Restrictive Legends from the Shares and take all actions necessary for Plaintiff to be able to sell them.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Raja Venkatesh requests that judgment be granted in his favor and against Defendants Mondee Holdings, Inc., Prasad Gundumogula, and Continental Stock Transfer & Trust Company, and that this Court award him the following relief:

(a)    A permanent injunction against Defendants Mondee and CST, requiring them to immediately remove the Restrictive Legends from the Shares and take all actions necessary for Plaintiff to be able to sell them.

(b)    An award of compensatory damages, in an amount to be proven at trial, sufficient to compensate Plaintiff for all losses caused by Defendants' conduct.

(c)    An award of punitive damages.

(d)    An award reimbursing Plaintiff for all attorney's fees and costs incurred in connection with this action.

(e)    An award of pre- and post-judgment interest.

(f)    Any and all further legal and equitable relief as this Court deems just and proper.

Dated:  December 8, 2023                         Respectfully submitted,

                                                 KATTEN MUCHIN ROSENMAN LLP

                                                 /s/ Thomas Artaki
                                                 Thomas Artaki
                                                 thomas.artaki@katten.com
                                                 50 Rockefeller Plaza
                                                 New York, New York 10020
                                                 (212) 940-8800

                                                 Michael J. Lohnes (*pro hac vice* forthcoming)
                                                 michael.lohnes@katten.com
                                                 525 W. Monroe Street, Suite 1900
                                                 Chicago, IL 60661
                                                 Telephone: (312) 902-5200

                                                 *Attorneys for Plaintiff Raja Venkatesh*