```
                                                          USDC SDNY
                                                          DOCUMENT
                                                          ELECTRONICALLY FILED
                                                          DOC #:
UNITED STATES DISTRICT COURT                              DATE FILED: 8/21/2024
SOUTHERN DISTRICT OF NEW YORK
```

------------------------------------------------------------ X
RAJA VENKATESH,                                              :
                                                             :
                                        Plaintiff,           :
                                                             :       23-CV-10734 (VEC)
                    -against-                                :
                                                             :       OPINION & ORDER
MONDEE HOLDINGS, INC., PRASAD                                :
GUNDUMOGULA, and CONTINENTAL                                 :
STOCK TRANSFER & TRUST COMPANY,                              :
                                                             :
                                        Defendants.          :
------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

      Raja Venkatesh sued Mondee Holdings, Inc. ("Mondee" or "Company") and Prasad Gundumogula (together, the "Mondee Defendants"), as well as Mondee's stock transfer agent Continental Stock Transfer & Trust Company ("Continental"), for allegedly wrongfully restricting his Mondee shares. *See* Compl., Dkt. 1. Because the share price has dropped precipitously, Plaintiff alleges that Defendants' restrictions cost him more than $6 million. *Id.* ¶ 48. He alleges violations of Section 10(b) of the Securities Exchange Act and Rule 10b-5 and raises various state law claims. *Id.* ¶¶ 60–117. The Mondee Defendants and Continental each moved to dismiss. *See* Mots., Dkts. 16, 19. For the following reasons, the Mondee Defendants' motion to dismiss Plaintiff's federal securities claim is GRANTED. Plaintiff is granted leave to file an amended complaint to cure the deficiencies explained in more detail below. The motions to dismiss are otherwise DENIED without prejudice to the Mondee Defendants and Continental renewing their motions if Plaintiff elects to amend his Complaint.

1

## BACKGROUND[1]

Defendant Mondee is a travel technology company. Compl. ¶ 2. Defendant Gundumogula co-founded Mondee's predecessor ("Legacy Mondee") in 2011. *Id.* ¶¶ 16–17. Mr. Gundumogula was the CEO and Chairman of Legacy Mondee, and Plaintiff joined Legacy Mondee as Chief Financial Officer in March 2017. *Id.* ¶¶ 2, 17, 28. Plaintiff held that role until mid-2021, when he became an Executive Vice President and head of Mergers & Acquisitions. *Id.* ¶ 28. In connection with his employment, Plaintiff was granted 11,531,627 Class D Units in Legacy Mondee. *Id.* ¶ 29.

In December 2021, Legacy Mondee announced that it had entered into a merger agreement (the "Merger"). *Id.* ¶ 18. The merger was complete on July 18, 2022, with Defendant Mondee being the surviving company. *Id.* Mondee is a public company, and its common stock is traded on Nasdaq. *Id.* Under the terms of the Merger, Legacy Mondee stock would be converted into shares of Mondee common stock. *Id.*

Concurrently with the Merger, Mondee and certain institutional investors executed a Registration Rights Agreement. *Id.* ¶ 20. The Registration Rights Agreement required Mondee, *inter alia*, to register for resale the Mondee common stock with the Securities and Exchange Commission ("SEC"). *Id.* It also contained a lock-up provision that prohibited the resale of Mondee common stock until the earlier of six months after the Merger's closing and two other events that did not come to pass. *Id.* ¶ 22.

Mondee filed the required registration statement with the SEC on October 3, 2022 (the "Registration Statement"). *Id.* ¶ 23. The Registration Statement specifically identified Plaintiff as a selling stockholder and indicated that his shares of Mondee common stock were being

---

[1] The Court draws the background facts from the Complaint, Dkt. 1, and assumes the truth of all well-pleaded allegations.

registered for resale on his behalf. *Id.* The Registration Statement was declared effective by the SEC on October 12, 2022, and the lock-up prohibition on resale of Mondee stock expired on January 18, 2023 — six months after the Merger closed. *Id.* ¶¶ 25–26.

Plaintiff left the company in September 2022, shortly after the Merger. *Id.* ¶ 30. In April 2023, Plaintiff entered into a Redemption Agreement with Legacy Mondee (the "Redemption Agreement"), pursuant to which Plaintiff redeemed his Class D Units in Legacy Mondee for 660,871 shares of Mondee Class A common stock (the "Shares"). *Id.* ¶ 31. Plaintiff also executed a Registration Rights Agreement Joinder (the "Joinder") with Mondee. *Id.* ¶ 32. The Joinder provided that Plaintiff was bound by the Registration Rights Agreement. *Id.* The Joinder annexed a letter that had been prepared by Mondee's outside counsel for Plaintiff's signature that represented that the Shares were free of any restrictive legends that could prevent their transfer or sale. *Id.* ¶ 33 (alleging that that the letter had the subject line "Raja Venkatesh – Representation Letter; Removal of Restrictive Legends on Securities" and contained "all facts necessary to authorize the transfer agent . . . to remove any applicable restrictive legends and stop transfer instructions from 660,871 shares of common stock . . . held by Raja Venkatesh").

After completing the paperwork, Plaintiff received an email from Mondee's outside counsel advising that he had "accurately completed all necessary forms required for the redemption." *Id.* ¶ 34. Counsel stated that, after Continental finished processing the appropriate paperwork, Plaintiff would be able to access his Shares through an online portal. *Id.* On May 30, 2023, Plaintiff received an account statement from Continental reflecting a transfer of Mondee shares to him on April 27, 2023. *Id.* ¶ 37. The account statement indicated that the Shares had three restrictive legends: (1) they were not registered pursuant to an effective registration statement and could not be sold or transferred except pursuant to an effective

3

registration statement; (2) they were subject to a lock-up and could not be sold or transferred during the term of the lock-up; and (3) they were owned by an "affiliate" and thereby considered "control securities" under SEC Rule 144, requiring an opinion of counsel providing a satisfactory explanation that any sale or transfer would be in compliance with SEC Rule 144. *Id.* ¶ 39. Plaintiff alleges that each of the restrictions lacked any factual basis and had been improperly placed on his Shares. *Id.* ¶ 40.

Plaintiff contacted the Mondee Defendants and Continental multiple times to request that they remove the restrictive legends from his Shares. *Id.* ¶¶ 44–46. Six times between June 2023 and November 2023, he asked Mondee to remove the restrictive legends. *Id.* ¶ 46. He contacted Continental four times during the same period. *Id.* ¶ 45. As of November 2023, the restrictive legends were still on his Shares. *Id.* ¶ 47. He received no explanation from the Mondee Defendants for their failure to remove the restrictions. *Id.* Continental told him only that it follows Mondee's instructions relative to restrictions on shares. *Id.* According to Plaintiff, two other former employees of Legacy Mondee had restrictive legends incorrectly placed on their shares, and the restrictions were removed only after they "were able to personally convince Mr. Gundumogula to allow the removal over his initial objection." *Id.* ¶ 43.

During the period when Plaintiff was trying without success to get the restrictions removed from his Shares, Mondee's stock price dropped significantly. *Id.* ¶ 48. In late May 2023, Mondee's common stock was trading at roughly $12 per share. *Id.* ¶ 38. The stock price dropped to $7 in mid-July, $4 in October, and $3.10 by the date the Complaint was filed. *Id.* ¶ 48. This drop resulted in an alleged loss to Plaintiff of $6 million. *Id.*

Plaintiff alleges that the restrictions were "no accident." *Id.* ¶ 49. According to the Complaint, the Mondee Defendants engaged in a scheme to keep the Company's share price

artificially inflated to maximize their ability to raise capital and to enable Mondee officers to obtain large returns when selling their shares. *Id.* Plaintiff owned 660,871 shares of Mondee common stock or approximately 1% of all outstanding shares. *Id.* ¶ 50. Due to low volume trading in the Company's shares, Plaintiff's intended sale of all his Shares "could have caused a significant decline in Mondee's stock price" and hurt the Mondee Defendants in advance of two major transactions. *Id.* ¶ 51. On June 9, 2023, Mondee closed an offering of 5,250,000 shares of Mondee common stock at a price of $10 per share (the "Secondary Offering"). *Id.* ¶ 52. In connection with the Secondary Offering, Mr. Gundumogula sold approximately 1.6 million shares for approximately $16 million. *Id.* ¶ 54. Other Company insiders also profited from the Secondary Offering. *Id.* ¶ 55. Then, in October 2023, Mondee completed a private placement to an investment fund (the "Private Placement") in which Mondee raised $10 million through the sale of warrants to purchase 1,275,000 shares of common stock, as well as certain newly designated preferred stock. *Id.* ¶ 57. Plaintiff alleges that the Mondee Defendants maintained the restrictive legends on his Shares in order to ensure favorable pricing for the Secondary Offering and Private Placement. *Id.* ¶¶ 56, 58.

Plaintiff filed this action in December 2023. Compl., Dkt 1. The Mondee Defendants and Continental each moved to dismiss the Complaint. Mots., Dkts. 16, 19.

## DISCUSSION

### I. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in

the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

Here, Plaintiff's securities fraud claims are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Rule 9(b) requires the complaint to "state with particularity the circumstances constituting fraud." The PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2).

## II.     Plaintiff Fails to Satisfy the Heightened Pleading Standard for Violations of Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5

Plaintiff sued the Mondee Defendants for violations of Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5. Section 10(b) of the Exchange Act prohibits the use or employment of "any manipulative or deceptive device or contrivance" in connection with the purchase or sale of a security. 15 U.S.C. § 78j(b). Subsections (a) and (c) of Rule 10b-5, 17 C.F.R. § 240.10b-5, create a cause of action for "scheme liability" based on a defendant's "use of any device, scheme, or artifice to defraud or the participation in any act, practice, or course of business that would perpetrate fraud on investors." *CompuDyne Corp. v. Shane*, 453 F. Supp. 2d 807, 821 (S.D.N.Y. 2006). To state a claim for scheme liability, a plaintiff must adequately allege (1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) that Plaintiff relied on that deceptive or manipulative act. *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 277 F. Supp. 3d 500, 517 (S.D.N.Y. 2017). The alleged scheme or activity must have occurred in connection with the

purchase or sale of a security.² *Id.*; *see also* 17 C.F.R. § 240.10b-5.  Because a scheme-liability claim sounds in fraud, it is subject to the heightened pleading requirement of Rule 9(b), and Plaintiff must specify "what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue."  *In re Parmalat Sec. Litig.*, 383 F. Supp. 2d 616, 622 (S.D.N.Y. 2005).

As to the scienter element, the PSLRA requires plaintiffs to plead a "strong inference" that the defendant acted with the intent to deceive, manipulate, or defraud.  *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 148 (S.D.N.Y. 2021).  A "strong inference" is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007).  The inquiry is whether "*all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."  *Id.* at 323.  This stricter standard does not alter the usual rule that courts must accept all factual allegations in the complaint as true.  *Id.* at 322.

Plaintiff has not alleged sufficiently that the Mondee Defendants intended to defraud him by restricting his ability to sell his Mondee shares "in connection with" his redemption of Legacy Mondee units.  Plaintiff adequately alleges that there was a purchase or sale of a security because he redeemed his Legacy Mondee units for shares of Mondee Class A common stock.  Compl. ¶ 31; *see also* 15 U.S.C. §§ 78c(a)(13)-(14) (defining "purchase" to "include any contract to buy, purchase, or otherwise acquire" securities, and "sale" to "include any contract to sell or otherwise dispose of" securities).  Separately, he alleges that the Mondee Defendants intended to

---

² The Mondee Defendants classify the "in connection with" element of scheme liability as a threshold standing question.  *See* Mondee Mem. at 7.  That is not correct.  What has been called "statutory standing" is "not a standing issue, but simply a question of whether the particular plaintiff has a cause of action under the statute."  *Cf. Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quotation omitted).

commit a deceptive act in furtherance of a fraud when they wrongfully placed and then refused to remove the restrictive legends on his shares. Compl. ¶¶ 49, 54–56. The allegations, however, do not create a strong inference that Defendants had a fraudulent intent before or simultaneously with any action they took on which Plaintiff relied in connection with the redemption.

The Complaint discusses the Redemption Agreement, the Joinder, and certain communications between Plaintiff and Defendants during the redemption process. *See id.* ¶¶ 31–34. The Mondee Defendants correctly note, however, that those paragraphs "merely recount" that Plaintiff signed the Redemption Agreement and Joinder, *see* Mondee Reply Mem. at 3; they do not allege that Defendants induced him to redeem his Legacy Mondee units by leading him to believe he would have freely tradeable Mondee stock when they had already determined that his Mondee shares would be restricted. Plaintiff's opposition memorandum paints a clearer picture of a fraud that began during the redemption process, *see* Pl. Mem. at 11 ("Plaintiff's claim . . . is based on the Mondee Defendants' efforts to structure and present the Redemption — through documents that included a letter instructing [Continental] 'to remove any applicable restrictive legends' — in such a way that deceived Plaintiff into believing he was surrendering his Legacy Mondee units for freely tradeable Mondee stock."), but arguments in an opposition memorandum are not a substitute for well pled factual allegations in a complaint. *See Roberts v. Weight Watchers Int'l, Inc.*, 217 F. Supp. 3d 742, 753 (S.D.N.Y. 2016) ("The plaintiff cannot amend his complaint merely by raising new facts and theories in his opposition papers." (cleaned up)), *aff'd*, 712 F. App'x 57 (2d Cir. 2017). The Complaint itself fails to allege facts that would allow the Court to draw a strong inference about the Mondee Defendants' intent before or during the redemption process.

The Court acknowledges that the Complaint contains some circumstantial evidence of Defendants' intent to defraud Plaintiff "in connection with" the redemption. First, the Complaint alleges that Plaintiff never had access to unrestricted shares. *See* Compl. ¶¶ 37, 39. On May 30, 2023, Plaintiff received an account statement that indicated (1) the shares had been transferred to him on April 27, 2023, and (2) the shares bore three restrictive legends. *Id.* According to the Complaint, the May 30, 2023, account statement was the first time Plaintiff knew that the shares had been transferred and the first time he had access to any account information. *See id.* ¶ 37 ("[Continental], however, had not informed Mr. Venkatesh prior to May 30, 2023[,] that the Shares were transferred to his [Continental] account."). The fact that the Shares contained restrictions from the moment they were transferred on April 27, 2023, is some circumstantial evidence that the Mondee Defendants intended, on April 25, 2023 — only two days before the transfer — to restrict his shares. Second, the Complaint alleges that the Mondee Defendants also restricted shares of two other former employees and removed those restrictions only after the former employees pleaded with Mr. Gundumogula to do so. Compl. ¶ 43.[3] The fact that pleading with the CEO resulted in restrictions being removed is certainly circumstantial evidence that the restrictions were wrongfully attached. Further, if placing unwarranted restrictions on shares was a larger policy or practice of the Mondee Defendants, it is possible that policy or practice was already in place before or during Plaintiff's redemption. That said, the allegations regarding the restrictions on other former employees' shares lack detail, including whether their shares were restricted before or after Plaintiff's. Even though there is some circumstantial evidence of a preexisting scheme to maintain unwarranted restrictions on the former employees'

---

[3] This factual allegation cuts both ways. Plaintiff's theory is that his shares were wrongfully restricted as part of a scheme to maintain an artificially high share price. If that is accurate, it is unclear why Mr. Gundumogula would have allowed the other former employees to sell their shares.

9

shares, there is not a single paragraph in the Complaint alleging directly that the Mondee Defendants intended to give Plaintiff restricted shares when Mondee executed the Joinder and falsely represented to Plaintiff that the Shares he would receive would be unrestricted. There are also no factual allegations that would allow the Court to infer that Plaintiff relied on the Mondee Defendants' acts or representations during the redemption process to redeem his Legacy Mondee shares; his shares in Legacy Mondee — a nonexistent company — had value only when redeemed.

All elements of a scheme liability claim are subject to Rule 9(b)'s requirement that the fraud be pled with particularity, and the scienter element is subject to the even higher standard that the facts create a "strong inference" of intent to defraud. Because the Complaint lacks particularity and fails to create a strong inference that, in the period leading up to and during the redemption process, the Mondee Defendants intended to defraud Plaintiff, Plaintiff has not adequately stated a claim.

### III. Leave to Amend May Not Be Futile

The Court must "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). In this Circuit, claims dismissed because of a failure to meet Rule 9(b)'s heightened pleading standard are "almost always" dismissed with leave to amend to give plaintiffs at least one opportunity to plead fraud with greater specificity. *Pasternack v. Shrader*, 863 F.3d 162, 175 (2d Cir. 2017) (citation omitted). That said, denial of leave to amend is proper if "amendment would be futile" and the plaintiff has "not offered specific changes . . . to cure [his] deficiencies." *Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 833 (2d Cir. 2019).

Amendment in this case may not be futile.[4] Plaintiff articulates in his opposition memorandum a theory of the fraudulent scheme that includes intent to defraud before and simultaneously with his redemption. Such facts, if well pleaded, could possibly satisfy the "in connection with" element of securities fraud and surpass the heightened pleading standards of Rule 9(b) and the PSLRA. The current draft of the Complaint contains some circumstantial evidence that the Mondee Defendants intended to defraud Plaintiff from the beginning of the redemption process, but it is not strong enough to satisfy the applicable pleading standard. Plaintiff can choose to amend the Complaint, add more detailed and thorough allegations of intent and the timeline of the scheme, and possibly cure the defects described above. Because amendment could save the scheme-liability claim from dismissal and Plaintiff has not yet had a chance to plead fraud with greater specificity, the Court grants Plaintiff leave to amend.

## IV.   Defendants' Motions to Dismiss Are Otherwise Denied Without Prejudice

Plaintiff's securities fraud claim is the only claim over which the Court has federal question jurisdiction, and there is no diversity jurisdiction because Plaintiff and the Mondee Defendants are all citizens of Texas. *See* Compl. ¶¶ 9–11. If Plaintiff is unable to state a claim for securities fraud in an amended complaint, the only possible basis for jurisdiction over the state-law claims would be supplemental jurisdiction. In that circumstance, given the early posture of this case, the Court would decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. *See Valencia v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (noting that, when "all federal-law claims are eliminated before trial," the balance of factors such

---

[4] While the Court is prepared to give Plaintiff another opportunity to state a fraud claim, it would be remiss if it did not point out that it shares Defendants' concern that Plaintiff has taken a garden variety breach of contract case (that, on the face of the Complaint, appears to be a meritorious claim) and dressed it up in fraud clothing. The Court urges Plaintiff to consider whether a more direct route to vindication of his rights is a plain vanilla breach of contract claim.

11

as judicial economy, convenience, fairness, and comity "point toward declining to exercise jurisdiction over the remaining state-law claims" (citation omitted)).

Because jurisdiction over Plaintiff's state law claims turns on whether he is able to state a federal claim for securities fraud, the Court will defer reviewing the state law claims until after Plaintiff amends his Complaint, should he choose to do so. The Mondee Defendant's motion to dismiss the state law claims and Continental's motion to dismiss are DENIED without prejudice to Defendants renewing the motions if Plaintiff files an amended complaint.

## CONCLUSION

The Mondee Defendants' motion to dismiss Plaintiff's securities fraud claim is GRANTED, and Plaintiff's securities claim is DISMISSED without prejudice. Should Plaintiff choose to amend his Complaint to cure the deficiencies identified *supra*, his amended complaint must be filed not later than **Thursday, September 12, 2024**. The Mondee Defendants' motion to dismiss the state-law claims and Continental's motion to dismiss are DENIED without prejudice.

The Clerk of Court is respectfully directed to terminate the open motions at Dkts. 16, 17, and 19.

**SO ORDERED.**

Date: **August 21, 2024**
New York, NY

_____
**VALERIE CAPRONI**
**United States District Judge**